IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RAFAEL CASTILLEJOS DE LA CRUZ, )
)
Plaintiff, )
)
v. ) 1:26cv236
)
UNC HEALTH CARE SYSTEM, )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion for partial dismissal of the complaint by Defendant University of North Carolina Health Care System ("UNC Health") (Doc. 5) and the motion of Plaintiff Rafael Castillejos de la Cruz to amend his complaint (Doc. 16). Cruz brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), 42 U.S.C. § 1981, and North Carolina state law. (Doc. 1.) The motions are fully briefed and ready for decision. For the following reasons, UNC Health's motion will be granted, and Cruz's motion to amend his complaint will be granted in part and denied in part.

## I. BACKGROUND

The facts, as alleged in Cruz's complaint and taken as true for purposes of UNC Health's motion, show the following:

Cruz is "a Latino male of Mexican origin, who is over 40 years old." (Doc. 1 ¶ 13.) He was hired in December of 2023 by UNC Health to work in the Environmental Services ("EVS") Department. (Id. ¶ 15.) His job responsibilities included maintenance work and cleaning. (Id. ¶ 17.)

Cruz had to perform "the work responsibilities of multiple employees" due to staffing shortages, often working beyond his scheduled hours. (Id. ¶¶ 18-19.) He was also asked to perform tasks beyond the scope of his job duties. (Id. ¶ 20.) Cruz "complained about his work conditions to his supervisor Daniella," who told Cruz that "he didn't have workplace rights because he was a Mexican employee." (Id. ¶¶ 21, 23.) Daniella also told Cruz that "UNC Medical Center didn't want Mexicans working there." (Id. ¶ 24.)

After his conversation with Daniella, Cruz "brought his concerns about his workplace treatment" and Daniella's statements to Ana-Elis Perry, an Associate Vice President at UNC Medical Center. (Id. ¶ 25.) Perry told Cruz that she would investigate his allegations. (Id. ¶ 26.)

In July of 2024, Cruz "transferred to working for UNC [Health's] valet, where he parked patients' cars." (Id. ¶ 27.) He worked with two employees named Marcos Ramos and Eric Rodriguez, who were under 40 years old. (Id. ¶¶ 28-29.) Ramos and Rodriguez "regularly yelled at [Cruz], but did not similarly yell at younger

workers." (Id. ¶ 31.) Ramos "and/or" Rodriguez also "told [Cruz] that UNC Medical Center didn't want Mexican workers." (Id. ¶ 32.) Cruz alleges that Ramos and Rodriguez more generally "displayed a pattern and practice of discrimination toward older Latino workers." (Id. ¶ 30.)

On November 5, 2024, Cruz returned to work after taking approved sick leave. (Id. ¶¶ 33-34.) He was met by Daniella, who told him, "in substance, '[o]h, no, good luck. You don't need to come back.'" (Id. ¶¶ 35-36.) Cruz was then "directed to meet with Human Resources." (Id. ¶ 37.) At the meeting with Human Resources, Cruz expressed his concerns "about the discrimination and hostile work environment he faced" at UNC Health. (Id. ¶ 38.) Cruz "was left with the overall impression that he was 'targeted' for discharge/constructive discharge." (Id. ¶ 39.)

Cruz was suspended from UNC Medical Center on December 5, 2024, and "unnecessarily escorted out of UNC Medical Center by two police officers." (Id. ¶¶ 41-42.) He was ultimately terminated on December 31, 2024, after a meeting that same day with Human Resources. (Id. ¶¶ 44, 46.) Cruz requested a translator for the meeting but did not receive one. (Id. ¶ 47.)

Cruz alleges that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), but does not say when. (Id. ¶ 10.) The EEOC issued him a right to sue letter on December 11, 2025. (Id. at 11.) He filed this action on March

11, 2026, bringing claims against UNC Health for (1) discrimination and retaliation under Title VII and the ADEA; (2) discrimination and retaliation on the basis of race under 42 U.S.C. § 1981; and (3) wrongful discharge under North Carolina state law. (Doc. 1.) UNC Health now moves to dismiss Cruz's wrongful discharge and § 1981 claims. (Doc. 5.) Cruz responded in opposition (Doc. 13) and also filed a motion seeking leave to amend his complaint (Doc. 16). UNC Health has filed a reply in support of its motion to dismiss (Doc. 15) and opposes leave to amend (Doc. 17). The motions are fully briefed and ready for decision.

## II. ANALYSIS

### A. Motion to Dismiss

#### 1. Legal Standards

UNC Health moves to dismiss Cruz's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 5.) UNC Health argues, <u>inter alia</u>, that Cruz's state law claim is barred by the Eleventh Amendment. (Doc. 6 at 4.) The Fourth Circuit has "been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." <u>Andrews v. Daw</u>, 201 F.3d 521, 524 n.2 (4th Cir. 2000). "Although not a true limit on the subject-matter jurisdiction of the federal courts, the Eleventh Amendment is 'a block on the exercise of that jurisdiction.'" <u>Roach v. W. Va.</u>

Reg'l Jail & Corr. Facility Auth., 74 F.3d 46, 48 (4th Cir. 1996) (quoting Biggs v. Meadows, 66 F.3d 56, 60 (4th Cir. 1995)). Once asserted by the state, Eleventh Amendment immunity "becomes a threshold issue that must be resolved before the court can address any of a plaintiff's claims." Smith v. Lanier, No. 1:20CV750, 2022 WL 903140, at *4 (M.D.N.C. Mar. 28, 2022).

As for a motion to dismiss under Rule 12(b)(1), "[t]he existence of subject matter jurisdiction is a threshold issue," which the court must consider before addressing the merits of a case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff bears the burden of proving this court's subject matter jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When assessing a challenge to subject matter jurisdiction, the court may look beyond the face of the complaint and consider other evidence outside the pleadings without converting the motion into one for summary judgment. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A court should dismiss for lack of federal subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, 945 F.2d at 768 (citation omitted).

As for a motion to dismiss under Rule 12(b)(6), Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. (8)(a)(2). A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." Iqbal, 556 U.S. at 678.

### 2. Whether Cruz's State-Law Wrongful Discharge Claim Is Barred by the Eleventh Amendment

UNC Health argues that Cruz's state-law wrongful discharge claim is barred by the Eleventh Amendment. (Doc. 6 at 4.) It contends that "Eleventh Amendment immunity bars an aggrieved employee from bringing a claim for wrongful discharge in violation of public policy against a state agency." (Id. at 5.) UNC Health further argues that it has not waived Eleventh Amendment immunity by purchasing private insurance. (Id. at 6.)

Cruz counters by asserting that UNC Health has waived any immunity to which it may be entitled. (Doc. 14 at 4.) He quotes at length Khan v. UNC Health Care Sys., No. 20CV977, 2021 WL 4392012 (M.D.N.C. Sept. 24, 2021), in support of his argument. (Doc. 14 at 4-6.) Cruz contends that "the procedural issues [UNC Health] now raises have already been addressed by this court" in Khan. (Id. at 4.)

With certain exceptions not applicable here, the Eleventh Amendment bars suits against states and any state instrumentality properly characterized as an "arm of the state." See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429–30 (1997).[1] While states may waive their Eleventh Amendment immunity, North Carolina

[1] While Congress may, in some circumstances, abrogate a state's sovereign immunity, there is no indication that Congress has abrogated North Carolina's sovereign immunity with respect to state law tort claims.

has not waived its Eleventh Amendment immunity for wrongful discharge claims. See Hooper v. North Carolina, 379 F. Supp. 2d 804, 814 (M.D.N.C. 2005); Dai v. Univ. of N. Carolina, at Chapel Hill, No. 1:02CV224, 2003 WL 22113444, at *5 & n.5 (M.D.N.C. Sept. 2, 2003).

Here, UNC Health "is a [s]tate agency and political subdivision governed and administered as an affiliated enterprise of the University of North Carolina[.]" N.C. Gen. Stat. § 116-350.5(a) (emphasis added). District courts in this circuit have uniformly concluded that UNC Health "is entitled to Eleventh Amendment immunity when it otherwise applies." Smith v. UNC Health Care Sys., No. 1:20-CV-52, 2021 WL 1146936, at *4 (M.D.N.C. Mar. 25, 2021); see also Solomon v. UNC Healthcare, No. 5:16-CV-24-FL, 2016 WL 6768920, at *4 (E.D.N.C. Oct. 19, 2016), report and recommendation adopted, No. 5:16-CV-24-FL, 2016 WL 6683470 (E.D.N.C. Nov. 14, 2016); Singh v. Univ. of N. Carolina at Chapel Hill, 659 F. Supp. 3d 659, 672 (M.D.N.C. 2023); Thomas v. North Carolina, No. 3:12-CV-00038-FDW, 2013 WL 566481, at *7 (W.D.N.C. Feb. 13, 2013), aff'd sub nom., Thomas v. NC, 539 F. App'x 124 (4th Cir. 2013).

Cruz's argument for waiver, quoting heavily from Khan, 2021 WL 4392012, is unavailing. Khan addressed whether North Carolina waived sovereign immunity "in relation to claims by employees under [the Family and Medical Leave Act] and the [Americans with

Disabilities Act]." Id. at *4. In that case, UNC Health acknowledged that it had waived sovereign immunity for actions under both acts. Id. The court in Khan did not discuss whether UNC Health had waived its sovereign immunity for state-law wrongful discharge claims. See generally id. Accordingly, Khan is not relevant to this case.

Further, Cruz's conclusory allegation that UNC Health "has waived and is not entitled to sovereign immunity protections in this case, because it is covered by private insurance, as well as for proprietary functions" is unavailing. (Doc. 1 ¶ 6.) As UNC Health points out, Cruz appears to be referring to North Carolina General Statute § 153A-435. Section 153A-435(a) provides that "a county may contract to insure itself and any of its officers . . . [p]urchase of insurance pursuant to this subsection waives the county's governmental immunity[.]" N.C. Gen Stat. § 153A-435(a) (emphasis added). The plain text of this statute demonstrates that it does not cover state agencies. See Alston v. N. Carolina A&T State Univ., 304 F. Supp. 2d 774, 783-84 (M.D.N.C. 2004) (holding that North Carolina state institutions do not waive their immunity by purchasing liability insurance). Accordingly, UNC Health has not waived its immunity by purchasing private insurance.[2]

[2] To the extent Cruz argues that UNC Health does not have, or has waived, immunity for its proprietary functions, he is mistaken. North Carolina's

UNC Health is an "arm of the state" for purposes of the Eleventh Amendment, and North Carolina has not waived its immunity for state-law wrongful discharge claims. Accordingly, Cruz's wrongful discharge claim is barred by the Eleventh Amendment. UNC Health's motion to dismiss Cruz's state-law wrongful discharge claim will therefore be granted.

### 3. Whether Cruz's § 1981 Claim Should Be Dismissed

UNC Health contends that Cruz's § 1981 claim "fails as a matter of law because it is well-established that plaintiffs cannot assert such claims against state agencies." (Doc. 6 at 8.) Cruz does not respond to UNC Health's argument. (See generally Doc. 13.)

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The Supreme Court has held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state

"sovereign immunity applies to both its governmental and proprietary functions." Evans v. Hous. Auth. of City of Raleigh, 602 S.E.2d 668, 670 (N.C. 2004); see also Hooper, 379 F. Supp. 2d at 812 ("Contrary to Plaintiff's assertion, NCCU's purchase of insurance does not waive its sovereign immunity even in state court.").

governmental units." Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 733 (1989).

Here, as Cruz acknowledges, UNC Health is "a statutorily-created public entity." (Doc. 1 ¶ 2.) As federal courts in this circuit have uniformly held, UNC Health is an arm of the state. See Singh, 659 F. Supp. 3d at 672; Thomas, 2013 WL 566481, at *7; Solomon, 2016 WL 6768920, at *4. Accordingly, Cruz does not have a remedy against UNC Health under § 1981. UNC Health's motion to dismiss Cruz's claim under § 1981 will therefore be granted.

The court now turns to Cruz's motion for leave to amend his complaint. (Doc. 16.)

**B. Motion for Leave to Amend**

While UNC Health's motion (Doc. 5) was pending, Cruz moved for leave to amend his complaint (Doc. 16). Cruz seeks to add The Car Park Group, LLC ("Car Park Group") as a defendant. (Id. ¶ 2.) His proposed amended complaint abandons the state-law unlawful discharge claim and adds a claim under § 1983 for discrimination and retaliation on the basis of race. (Doc. 16-1 ¶¶ 63-76.)

Read generously, the proposed amended complaint lists the following claims against UNC Health and Car Park Group: (1) discrimination in violation of Title VII and the ADEA; (2) retaliation in violation of Title VII and the ADEA; (3) a claim under 42 U.S.C. § 1981 for discrimination and retaliation on the basis of race; and (4) a claim under § 1983 for discrimination and

retaliation on the basis of race. (See id. ¶¶ 63-76.) For the reasons explained below, Cruz's motion to amend will be granted in part and denied in part.

**1. Legal Standards**

Federal Rule of Civil Procedure 15(a) provides that a plaintiff may amend a complaint once as a matter of course within 21 days after the earlier of (1) service of a responsive pleading or (2) service of a motion under Federal Rule of Civil Procedure 12(b), (e), or (f). After that period, a party may amend only with either the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(1)(2); Foman v. Davis, 371 U.S. 178, 182 (1962) (noting that "the grant or denial of an opportunity to amend is within the discretion of the District Court"). While district courts have discretion to grant or deny a motion to amend, the Fourth Circuit has interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citation omitted); Foman, 371 U.S. at 182 (same).

"[I]f the proposed change advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 225 (8th Cir. 1994) (citing Charles A. Wright & Arthur Miller, Fed.

Prac. & Proc.: Civil, § 1487, at 637 (1991)) (alterations adopted); see Joyner v. Abbott Lab'ys, 674 F. Supp. 185, 190 (E.D.N.C. 1987) (same). "To determine whether a proposed amended complaint would be futile, the Court reviews the revised complaint under the standard used to evaluate a motion to dismiss for failure to state a claim." Amaya v. DGS Constr., LLC, 326 F.R.D. 439, 451 (D. Md. 2018) (citing Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011)). Thus, "[a] motion to amend a complaint is futile 'if the proposed claim would not survive a motion to dismiss.'" Pugh v. McDonald, 266 F. Supp. 3d 864, 866 (M.D.N.C. 2017) (quoting James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996)).

A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Martin, 980 F.2d at 952. To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson, 551 U.S. at 94, and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra, 120 F.3d at 474.

Rule 12(b)(6) and Rule 15 should be balanced against Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint

need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6), and thus Rule 15, protect against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 545, 570; see Iqbal, 556 U.S. at 678. When considering whether a Rule 15 motion to amend is futile, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302.

### 2. Whether Leave to Amend Should Be Granted

#### a. Title VII and ADEA Discrimination and Retaliation Claims

UNC Health contends that amendment of Cruz's Title VII and ADEA claims would be futile for two reasons. First, it contends that any Title VII or ADEA charge against Car Park Group would be administratively barred because no charge was filed against Car Park Group with the EEOC. (Doc. 17 at 6.)[3] Second, it argues that any new allegations in the amended complaint fail to state a claim upon which relief could be granted. (Id. at 6-7.)

Cruz does not directly address UNC Health's contention that

[3] UNC Health's counsel explained that he "does not represent Car Park and is responding to the allegations against Car Park to explain why the proposed [a]mended [c]omplaint is futile and why the allegations against Car Park cannot support any sort of vicarious claim against UNC Health." (Id. at 5 & n.3.)

his claim against Car Park Group is administratively barred because he failed to name Car Park Group in the EEOC charge. Rather, he contends that his claims are not administratively barred "because the EEOC has already issued a 90-Day letter for this case and all claims were timely filed." (Doc. 18 at 6.) Cruz also characterizes UNC Health's "documentation of [his] employment status" as "murky," making it "unclear when [he] was formally terminated by UNC Health, and when he formally began working at Car Park [Group]." (Id. at 7.)

Beginning with the issue of whether Cruz's claims against Car Park Group would be administratively barred, "Title VII [and the ADEA] gives initial enforcement responsibility to the EEOC. An individual alleging discrimination in violation of Title VII [or the ADEA] must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)). "If the [EEOC] determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). "An individual cannot bring suit until he has exhausted the administrative process." Chacko, 429 F.3d at 509.

"The EEOC charge defines the scope of the plaintiff's right

to institute a civil suit." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). Importantly, "[u]nder Title VII and the ADEA, a civil action may be brought only 'against the respondent named in the charge.'" Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998) (quoting 42 U.S.C. § 2000e-5(f)(1)). "The purposes of this requirement include putting the charged party on notice of the complaint and allowing the EEOC to attempt reconciliation." Id.

Here, Cruz's EEOC charge was brought against "UNC Medical Center, Environmental Services (EVS)." (Doc. 17-1 at 2.)[4] Car Park Group is not named. (See generally id.) Further, Cruz's proposed amended complaint states that Car Park Group is "an independent contractor of UNC Health." (Doc. 16-1 ¶ 34.)

[4] The court may consider a document submitted by a party "that was not attached or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). Here, the document attached by UNC Health – Cruz's EEOC charge – is necessary to the amended complaint because "[t]he EEOC charge defines the scope of the plaintiff's right to institute a civil suit." Bryant, 288 F.3d at 132. Further, Cruz does not dispute the authenticity of the EEOC charge. (See generally Doc. 18.) Therefore, the court will consider it.

Accordingly, Cruz's EEOC charge "failed to put" Car Park Group, an independent contractor, "on notice that they were potentially subject to . . . liability for the alleged violations." Causey, 162 F.3d at 800-01. As a result, any Title VII or ADEA claim against Car Park Group would be administratively barred, meaning amendment to add such a claim against would be futile. See id. (holding that claims against individual defendants were barred when EEOC complaint only named the entity that the individual defendants worked for). Therefore, Cruz's motion for leave to amend will be denied to the extent that it seeks to add Title VII or ADEA claims against Car Park Group.

As for the amended complaint's allegations against UNC Health, the amended complaint seeks to "provide additional information that bolsters [Cruz's] allegations in the case." (Doc. 16 ¶ 7.) The original complaint contained a claim for discrimination and retaliation under Title VII and the ADEA. (Doc. 1 ¶¶ 52-58.) UNC Health has not moved to dismiss those claims. (See Doc. 5.) Therefore, the court will grant Cruz leave to amend his Title VII and ADEA discrimination and retaliation claims against UNC Health.

**b. § 1981 Claims**

The proposed amended complaint seeks to add a claim under 42 U.S.C. § 1981 against Car Park Group. UNC Health has not addressed whether this claim, as against Car Park Group, would be futile.

(See generally Doc. 17.) Therefore, the court will grant Cruz's motion for leave to amend to the extent that he seeks to add a claim under § 1981 against Car Park Group.

However, amendment as to UNC Health would be futile. For the reasons explained above, § 1981 does not provide a cause of action against state actors. See supra; see also Jett, 491 U.S. at 732-33. Therefore, Cruz's motion for leave to amend will be denied as futile to the extent he seeks to amend his claim under § 1981 against UNC Health.

**c. § 1983 Claims**

The proposed amended complaint seeks to add a claim under § 1983 against Car Park Group. UNC Health has not addressed whether this claim, as against Car Park Group, would be futile. (See generally Doc. 17.)

The proposed amended complaint states that Car Park Group is "an independent contractor of UNC Health." (Doc. 16-1 ¶ 34.) However, Cruz also alleges facts which indicate that UNC employees were involved in his termination, notwithstanding his "transfer[] to working for Car Park" on July 2024. (Id. ¶ 33.) For example, UNC Health's Human Resources met with Cruz on December 31, 2024, the day Cruz was fired. (Id. ¶ 54.) UNC Health employee Daniella, Cruz's former supervisor, was at this meeting. (Id. ¶ 56.) At this same meeting, UNC Health's Human Resources "presented [Cruz] . . . with a document" to sign. (Id. ¶ 60.) Finally, the

proposed amended complaint alleges that "Defendant(s) [sic]" terminated Cruz's employment at the December 31 meeting with UNC Health Human Resources. (Id. ¶ 57.)

On this record, it is unclear whether Car Park Group was acting "under color of state law" within the meaning of § 1983. Cf. Sorrick v. Manning, No. CV TDC-16-0709, 2017 WL 3668755, at *8 (D. Md. Aug. 22, 2017), aff'd, 717 F. App'x 300 (4th Cir. 2018) ("Private companies that employ individuals acting under color of state law are considered 'persons' for the purposes of § 1983[.]"); White Coat Waste Project v. Greater Richmond Transit Co., 35 F.4th 179, 190 (4th Cir. 2022) ("'The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question' as the state-action inquiry: 'is the alleged infringement of federal rights "fairly attributable to the State?"'" (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982))). Accordingly, the court will grant Cruz leave to amend to the extent he seeks to add a claim under § 1983 against Car Park Group.

However, amendment would be futile as against UNC Health. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). UNC Health, as a state agency, is not a "person" within the meaning of § 1983. See Huang v. Bd. of Governors of Univ. of N.C., 902

F.2d 1134, 1339 n.6 (4th Cir. 1990) ("An alternative and potentially dispositive basis for denial of the § 1983 claims against NCSU, the NCSU governing board, the Board of Governors of the University of North Carolina . . . is that, as alter egos of the state, they are not 'persons' within the meaning of § 1983."); Costello v. Univ. of N.C. at Greensboro, 394 F. Supp. 2d 752, 761 (M.D.N.C. 2005) (holding that a state university is not a "person" under § 1983). Accordingly, the court denies Cruz's motion for leave to amend to the extent it seeks to add a claim under § 1983 against UNC Health.

**d. Rule 11, Prejudice, and Delay**

UNC Health further argues that leave to amend should be denied because UNC Health would be unduly prejudiced by amendment. UNC Health points to Federal Rule of Civil Procedure 11 and argues that amendment would be unduly prejudicial in two ways. First, it contends that it sent Cruz's counsel a "Rule 11 Notice," which "outline[d] why certain allegations in [Cruz's] [c]omplaint were baseless, including" the allegation that Cruz provided valet services for UNC Health. (Doc. 17 at 11.) Nevertheless, Cruz filed this amended complaint where "he has retained his allegations that his former EVS supervisor, [Daniella], somehow 'took actions seeking [Cruz's] termination from Car Park.'" (Id. at 12 (quoting Doc. 16-1 ¶ 46).) Second, UNC Health observes that the proposed amended complaint "would also force UNC Health to respond to

Section 1981 and 1983 claims that are precluded as a matter of law." (Id.)

Cruz responds that he did not realize until the "Rule 11 Notice" that "when he transferred from UNC Health's Environmental Services ("EVS") Department to the UNC Health valet . . . his formal employer changed to an independent contractor that works for UNC Health." (Doc. 18 at 1.) Cruz also observes that UNC Health asked him to amend his complaint in the "Rule 11 Notice," and now "astonishingly seeks to block the [m]otion to [a]mend that [UNC Health] itself prompted with its June 8 Letter." (Id. at 3.)

Rule 11(b)(2) states that by signing a filing, an attorney or unrepresented party certifies that, to the best of his knowledge and after a reasonable inquiry, "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Rule 11 imposes "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 551 (1991).

Here, as explained above and taking the allegations of the amended complaint as true, it is not unreasonable to conclude that Cruz may have been confused by who his actual employer was. See supra. However, Cruz's attempt to maintain an action under § 1981

against UNC Health is more concerning. It is well-settled that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." Jett, 491 U.S. at 733. It is also well-settled that UNC Health is a state governmental unit. See Singh, 659 F. Supp. 3d at 672; Thomas, 2013 WL 566481, at *7; Solomon, 2016 WL 6768920, at *4. Rather than make an argument "for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), Cruz has not meaningfully addressed why he is bringing a claim against UNC Health under 42 U.S.C. § 1981 in either of his briefs. (See generally Docs. 13, 18.)

Further, rather than make an argument "for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), Cruz has contended in both his opposition to UNC Health's motion to dismiss and his reply brief in support of his motion for leave to amend that Khan "denied" the "[s]overeign [i]mmunity arguments" UNC Health made in this case. (Doc. 18 at 8-10; see also Doc. 14 at 4 (asserting that "the procedural issues [UNC Health] now raises have already been addressed by this court" in Khan).) As discussed above, Khan did no such thing. Indeed, a cursory reading of the language Cruz's counsel quoted in his briefs would confirm that. (See id. at 9 (quoting Khan, 2021 WL 4392012, at *4 ("UNC Health acknowledges

that it has waived its sovereign immunity in relation to claims by employees under FMLA and the ADA." (emphasis added))).)[5]

However, the court has denied Cruz leave to amend his claim under § 1981, and Cruz abandoned his state-law tort claim in his proposed amended complaint. Additionally, UNC Health has not moved for sanctions. Accordingly, the court will take no further action at this time.[6]

Finally, UNC Health argues that leave to amend should be denied because Cruz "waited more than five months after filing his original complaint to file [his] motion to amend." (Doc. 17 at 13.) While acknowledging that delay alone is an insufficient reason to deny leave to amend, UNC Health argues that this delay,

---

[5] Even if counsel was not aware of any of this caselaw initially, he would have been alerted to it by UNC Health's brief supporting its motion to dismiss, which was filed before Cruz's counsel filed his reply brief supporting his motion for leave to amend.

[6] Ironically, in the same brief where UNC Health implies that Cruz's counsel violated Rule 11, UNC Health twice cites a "Sawyers v. United Parcel Serv., Inc., 2020 WL 5658061 (M.D.N.C. Sept. 23, 2020)." (See Doc. 17 at 10, 13.) UNC Health quotes Sawyers as stating, "[a] plaintiff's failure to respond to a defendant's arguments that a claim should be dismissed constitutes an abandonment of that claim." (Id. at 10.) No case exists at the cite "2020 WL 5658061." There is a decision from this district, Sawyers v. United Parcel Serv., Inc., No. 1:18CV1037, 2019 WL 4305771 (M.D.N.C. Sept. 11, 2019). Though Sawyers stands for the proposition that a plaintiff's failure to respond to an argument constitutes abandonment of the claim, the quoted language does not appear in that decision. See generally Sawyers, 2019 WL 4305771. Because counsel on both sides of this case have failed to carefully proof their work, all are cautioned that they are obligated to read the legal authority on which they rely, confirm its existence and validity, and confirm that it supports their legal contentions before citing it. Allen v. Western Governors Univ., No. 2:25-cv-00325-RFB-NJK, 2026 WL 893368, at *1 (D. Nev. Mar. 31, 2026).

"coupled with the proposed amendment's futility and undue prejudice to UNC Health," requires denial of leave to amend. (Id. at 14.) "Typically, undue delay is found when a party seeks leave to amend following the close of discovery." Citynet, LLC ex rel. United States v. Frontier W. Virginia Inc., No. 2:14-CV-15947, 2018 WL 5269367, at *1 (S.D. W. Va. Oct. 23, 2018) (citing Simmons v. Justice, 196 F.R.D. 296, 297 (W.D.N.C. 2000); Remington Arms Co. v. Modern Muzzleloading, Inc., No. 2:97-CV-00660, 1998 WL 1040949, at *2 (M.D.N.C. Dec. 17, 1998)). Here, discovery has not even begun, and this is Cruz's first motion for leave to amend his complaint. Accordingly, Cruz's motion for leave to amend will not be denied on the ground of delay.

**III. CONCLUSION**

For the reasons stated,

IT IS ORDERED that UNC Health's motion for partial dismissal of the complaint (Doc. 5) is GRANTED and Cruz's wrongful discharge and § 1981 claims against UNC Health are DISMISSED.

IT IS FURTHER ORDERED that Cruz's motion for leave to amend (Doc. 16) is GRANTED IN PART and DENIED IN PART as noted herein. Cruz shall file his proposed amended complaint consistent with the terms of this memorandum opinion and order forthwith.

/s/ Thomas D. Schroeder
United States District Judge

November 16, 2026